**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TANYA DOTSON, MARIE BALDWIN, CLAUDIA MERISCA, ASHLEY THRUSH, JODI BENNETT, JENNIFER BLACKWELL, SELENA BLUNTZER, AMY CAMERON, DAWN CAMERON, CHRISTI COFFMAN, LESLIE DANIELS, ANGELICA DAVILA, SUSAN DAVIS, JULIE DENHAM, JENNIFER DOSS, VENISSA DRIGGERS, KERI EGNOR, RAQUEL FELIZ-CLARK, ANGIA FIELDS, SHANDRA FISHER, JASMINE FOSTER, ANDREA GAFFNEY, JENNIFER GARLAND, MANDY GONZALES, REBBIE GORDON, SHANNON GRISWOLD, SUSAN HARRIS, JUANITA HERNANDEZ, VERONICA HERNANDEZ, DONNA HOUSE, NATISHA JOHNSON, ISABEL JONES, LAKEISHA JONES, TEESHA JONES, KRISTAL KELLEY, KAYLEIGH KWIATKOWSKI, ANDREA LANTIGUA, CRYSTAL LARRY, LUCIA LECHNER, SHANNON LLOYD, AIMEE LOCKART, KRISTAL LOFTY, LEANNE MARTIN, ANGELICA MCCLURE, SARAH MCCORMACK, RHIA MCCOY, LISA MCDANIEL, JO MARIE MCDONALD, BETTY MCDOWELL, JESSICA MCMILLER, EMILY MCNABB, DEONDRAVETTE MCNEIL, MELINDA MILLER, JENNIFER MONTEJO, DAWN MOORE, TIFFANY MORGAN, PATRICIA MOUNIVONG, LISA MURRAY, ANGELA OCHOA, STEFFANIE OLDMEN, AMY PATTERSON, AMANDA PINNACE, AMBER ROBERTS, ELICIA ROGERS, JENNIFER ROXBURY, APRIL SAARI, TONILYNN SAVAGE, MARTHA SCHMIDT, CASSANDRA SCURLOCK, MELISSA SHARP, TIARI SIMPSON, RAMONA SPENCER, ANGEL STABELL, HOLLY STEWART, LUCINDA STUART, ANGELA SWENSON, KRYSTAL TATE, | Case No. <br><br> **JURY TRIAL DEMANDED** |

RENEKA TAYLOR, SHAMEKA THOMAS,
WANDA THOMPSON, LAURA
THOMPSON, JUDY TRAENKNER, NICOLE
TSACUDAKIS, CARRIE TYE, BRITTANY
UGGERUD, GEREA VERNON, AMANDA
WALKER, THERESA WELLS, JENNIFER
WILLIAMS, KANDI WILSON, DANA
WILSON, KATINA WILSON, DESHUN
YOUNG, TINA ZERILLO-OTTO,

     Plaintiffs,

v.

BAYER CORP., BAYER HEALTHCARE
LLC, BAYER ESSURE, INC.,
(f/k/a CONCEPTUS, INC.), BAYER
HEALTHCARE PHARMACEUTICALS
INC., and BAYER A.G.,

     Defendants.

## NOTICE OF REMOVAL

Defendants Bayer Corporation, Bayer Essure Inc., Bayer HealthCare LLC, and Bayer

HealthCare Pharmaceuticals (together, "Bayer") by and through their undersigned counsel,

hereby provide notice pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446 of the removal of the

above-captioned case from the Circuit Court of the City of St. Louis (the "Circuit Court"), to the

United States District Court for the Eastern District of Missouri, Eastern Division.  The grounds

for removal are as follows:

    1.     As part of a growing and troubling trend, 94 Plaintiffs from 31 different states—

the vast majority of whom have zero connection to Missouri—filed a Petition for Damages

("Petition") in the Circuit Court for the City of St. Louis on August 16, 2016, in this civil action.

The Petition alleges that Plaintiffs suffered various injuries as a result of their individual

experiences using Essure, an FDA-approved Class III medical device that serves as a form of

permanent female birth control.  *See* Ex. A (Petition for Damages).  Plaintiffs' counsel have filed

nearly identical complaints in *Dorman v. Bayer Corp.*, 4:16-cv-00601 (32 plaintiffs), *Tenny v.*

*Bayer Corp.*, 4:16-cv-01189 (95 plaintiffs), *Jones v. Bayer Corp.*, 4:16-cv-01192 (99 plaintiffs),

*Mounce v. Bayer Corp.*, 4:16-cv-01478 (94 plaintiffs), and *Hall v. Bayer Corp.*, 4:16-cv-01523

(94 plaintiffs) which Bayer previously removed to this Court.  *See* Notice of Removal, *Dorman*

*v. Bayer Corp.*, 4:16-cv-00601, ECF Doc. 1; Notice of Removal, *Tenny v. Bayer Corp.*, 4:16-cv-

01189, ECF Doc. 1; Notice of Removal, *Jones v. Bayer Corp.*, 4:16-cv-01192, ECF Doc. 1;

Notice of Removal, *Mounce v. Bayer Corp.*, 4:16-cv-01478, ECF Doc. 1; Notice of Removal,

*Hall v. Bayer Corp.*, 4:16-cv-01523, ECF Doc. 1.

2.      Essure was approved by FDA through the "rigorous" premarket approval

("PMA") process in 2002.  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317 (2008); Ex. B

(Premarket Approval Order).  Since then, FDA has granted numerous supplemental approvals,

including as recently as May 2016, *see* Ex. C (FDA website noting PMA Supplements),

repeatedly reviewing and approving Essure's design, construction, manufacturing, testing,

training requirements, warnings, instructions for use, patient information, and all other labeling.

3.      After a public hearing in September 2015 and months of investigation, FDA

recently reaffirmed that "FDA believes Essure remains an appropriate option for the majority of

women seeking a permanent form of birth control."  Ex. D (FDA News Release (Feb. 29, 2016),

http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm488313.htm).

4.      In addition to this Notice of Removal, Bayer is filing a Motion to Dismiss and

Motion to Sever.  The Motion to Dismiss demonstrates that this Court should dismiss the claims

of the Plaintiffs whose claims have no connection to Missouri for lack of personal jurisdiction

and under the doctrine of forum non conveniens, and that the Court should dismiss all of

Plaintiffs' claims as preempted and inadequately pled.  The Motion to Sever shows that Plaintiffs' claims should be severed because they are misjoined.

5.      As set forth more fully below, this case is properly removed because this Court has jurisdiction for three reasons.  *First*, this Court has diversity jurisdiction because the amount in controversy with respect to each Plaintiff exceeds $75,000 and complete diversity of citizenship exists between the proper Plaintiffs and Defendants.  Only three of the 94 Plaintiffs— Ashley Thrust, Marie Baldwin, and Claudia Merisca—allege that they are citizens of states in which a Defendant is a citizen.  Their misjoinder here does not defeat complete diversity as to the remaining unrelated Plaintiffs and the Defendants.  To the contrary, this Court should exercise its discretion to consider and grant Bayer's Motion to Dismiss the claims of these and other Plaintiffs whose claims have no connection to Missouri for lack of personal jurisdiction or under the forum non conveniens doctrine before determining whether complete diversity exists. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).  Indeed, in several recent cases involving similar circumstances, well-reasoned decisions of other courts have done precisely that.  *See, e.g.*, *Aclin v. PD-RX Pharms., Inc.*, No. 5:15-cv-00561, 2016 WL 3093246, at *2 (W.D. Okla. June 1, 2016) (dismissing claims of out-of-state plaintiffs for lack of personal jurisdiction before considering whether complete diversity existed); *In re: Zofran (Ondansetron) Prods. Liab. Litig.*, MDL No. 1:15-MD-2657, 2016 WL 2349105, at *2-3 (D. Mass. May 4, 2016) (dismissing claims of non-Missouri plaintiffs for lack of personal jurisdiction before considering whether to remand for lack of complete diversity).  Once this Court dismisses the claims of the three non-diverse Plaintiffs (as well as the other 83 Plaintiffs whose claims have *no* connection to Missouri), there is complete diversity between the remaining Plaintiffs and Defendants.

4

6.       Accordingly, this case involves a question presented in a pending appeal in the Eighth Circuit:  Whether the claims of non-Missouri plaintiffs against non-Missouri defendants should be dismissed for lack of personal jurisdiction before the existence of diversity is determined, where the non-Missouri plaintiffs' claims have no connection to Missouri.  *Robinson v. Pfizer, Inc.*, 16-2524.  Here, the vast majority of Plaintiffs—more than 90%—have *no* connection at all to Missouri and should not be suing in this State.  These 86 plaintiffs are not citizens of Missouri and do not allege that they received the product at issue in Missouri or were injured in Missouri.  None of the Defendants, Bayer Corporation, Bayer HealthCare LLC, Bayer Essure Inc., and Bayer HealthCare Pharmaceuticals Inc. (collectively, "Bayer"), is based in Missouri either.  The Court should either await the decision in *Robinson* or reject Plaintiffs' forum-shopping efforts now and dismiss the claims of the non-Missouri Plaintiffs for lack of personal jurisdiction or (in the alternative) under the doctrine of forum non conveniens.

7.       Alternatively, even if this Court considers subject matter jurisdiction before considering Bayer's Motion to Dismiss—which it need not and should not do—this Court should ignore the citizenship of the three non-diverse Plaintiffs because they are fraudulently joined and misjoined.

8.       *Second*, this Court also has federal question jurisdiction.  This case involves a medical device that was approved by FDA after receiving the highest level of scrutiny available in the federal regulatory system.  Less than 1% of medical devices receive this rigorous federal approval.  In addition, Essure has been subject to ongoing, intense review by the FDA, which included public hearings addressing the same federal regulatory issues that form the premise of this lawsuit.  Plaintiffs plead violations of federal law on the face of their Petition.  Plaintiffs' right to relief turns on resolution of the federal-law questions, and the exercise of federal

question jurisdiction here will not disrupt the balance between state and federal jurisdiction, in light of the extraordinary federal involvement in the very issues that are at the heart of this case and the small number of medical devices subject to such extraordinary federal oversight.  *See Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009); *see also Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 878 (W.D. Tenn. 2013) (finding federal question jurisdiction because state-law product liability claims regarding PMA medical device required the court "to examine federal law, and, even more specifically, examine federal requirements imposed by the FDA through the premarket approval process"); *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 677-78 (S.D. Ohio 2014) (similar).

9.      *Third*, this Court has diversity jurisdiction under the Class Action Fairness Act ("CAFA").  As noted above, the same Plaintiffs' counsel have filed nearly identical complaints in *Dorman*, *Tenny*, *Jones*, *Mounce*, and *Hall*.  *See* Notice of Removal, *Dorman v. Bayer Corp.*, 4:16-cv-00601, ECF Doc. 1; Notice of Removal, *Tenny v. Bayer Corp.*, 4:16-cv-01189, ECF Doc. 1; Notice of Removal, *Jones v. Bayer Corp.*, 4:16-cv-01192, ECF Doc. 1; Notice of Removal, *Mounce v. Bayer Corp.*, 4:16-cv-01478, ECF Doc. 1; Notice of Removal, *Hall v. Bayer Corp.*, 4:16-cv-01523, ECF Doc. 1.  Together, these complaints have more than 500 plaintiffs, and satisfy CAFA's diversity and amount in controversy requirements.  *See* 28 U.S.C. § 1332(d)(2), (d)(6), (d)(11)(B)(i).  The fact that these complaints contain the *same* substantive allegations, the *same* causes of action, and were filed by the *same* counsel in the *same* jurisdiction indicate that they are part of the *same* mass action.  Plaintiffs in these cases cannot avoid removal under CAFA by artificially separating their claims into six petitions.  *See, e.g.*, *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008) (CAFA "prevent[s] plaintiffs from artificially structuring their suits to avoid federal jurisdiction"); *Proffitt v. Abbott*

*Labs.*, No. 2:08-CV-151, 2008 WL 4401367, at *2, 5 (E.D. Tenn. Sept. 23, 2008) (same, where plaintiffs' contrived structuring of eleven separate complaints was "completely arbitrary" and "ha[d] no justifiable basis" other than to deliberately circumvent CAFA); *see also Brook v. UnitedHealth Group, Inc*., No. 06-cv-12954, 2007 WL 2827808, *4 (S.D.N.Y. Sept. 27, 2007) ("Plaintiffs cannot simply evade federal jurisdiction by defining the putative class on a state-by-state basis, and then proceed to file virtually identical class action complaints in various state courts.  Such conduct is precisely what the CAFA legislation was intended to eradicate.").

**I.     THE PROCEDURAL REQUIREMENTS OF REMOVAL ARE MET.**

10.     Pursuant to 28 U.S.C. § 1446(a) and E.D. Mo. L.R. 2.03, true and correct copies of all process, pleadings, orders and other documents filed in the state court action are attached as Exhibit A.

11.     Plaintiffs' Petition was served on Bayer HealthCare LLC and Bayer HealthCare Pharmaceuticals Inc. on September 8, 2016, on Bayer Essure Inc. and Bayer Corporation on September 16, 2016.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1), which requires a notice of removal to be filed within 30 days of the service of a complaint upon the defendants.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (30-day time limit for removal runs from date of formal service of the initial complaint); Fed. R. Civ. P. 6 ("if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

12.     Defendant Bayer AG has not yet been served in this matter.  Nevertheless, all Defendants—each of which is represented by the undersigned—join in or consent to this Notice of Removal.  *See* 28 U.S.C. § 1446(b)(2).[1]

13.     The United States District Court for the Eastern District of Missouri, Eastern Division, presides in the locality in which the state court action is now pending.  It is therefore a proper forum for removal.  *See* 28 U.S.C. §§ 105(a)(1), 1441(a).

14.     No Defendant is a citizen of the State of Missouri, the state where this action was brought.  *See id.* § 1441(b)(2).

15.     A copy of this Notice of Removal is being served on Plaintiffs, and a copy is being filed with the Circuit Court for the City of St. Louis, Missouri.  *See id*. § 1446(d).

16.     If any questions arise about this removal, Bayer respectfully requests the opportunity to present briefing and oral argument in support of removal.

## II.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

17.     A defendant may remove an action from state court to federal court if the action could have been brought originally in federal court.  *See* 28 U.S.C. § 1441.  Here, federal jurisdiction exists based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, because this is a civil action between citizens of different states, and it is facially apparent that the amount in

---

[1] Bayer AG, which has not been served and which is represented by the undersigned, consents in this removal, but respectfully reserves all other rights.  *See City of Clarksdale v. BellSouth Telecommc'ns., Inc.*, 428 F.3d 206, 214 n.15 (5th Cir. 2005) ("A defendant's removal to federal court does not waive its right to object to service of process."); *Rogers v. Amalgamated Transit Union Local 689*, 98 F. Supp. 3d 1, 5 (D.D.C. 2015) (unserved defendant who consented to removal did not waive objection to service of process); 14C Wright & Miller, et al., *Federal Practice and Procedure* § 3738 (4th ed. 2009) ("[D]efendants do not waive any defense by removing a case to federal court.").

controversy with respect to each Plaintiff exceeds $75,000, exclusive of interest and costs.  *See id.* § 1332(a); *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).

### A.    The Amount-In-Controversy Exceeds $75,000.

18.    Although Plaintiffs do not specifically allege the amount of damages in their Petition, it is "facially apparent" that the damages sought, including any punitive damages, with respect to each of the Plaintiffs exceed $75,000.  *See* 28 U.S.C. § 1446(c)(2); *e.g.*, *Kina v. Mindland Funding, LLC*, No. 4:15-cv-00950, 2015 WL 5487357, at *2 (E.D. Mo. Sept. 16, 2015) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F. 3d 1326, 1336 (5th Cir. 1995)); *Hollenbeck v. Outboard Marine Corp.*, 201 F. Supp. 2d 990, 994 (E.D. Mo. 2001); *see also Allison v. Sec. Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) ("Punitive damages are included in determining the amount in controversy.").

19.    Plaintiffs allege that they have sustained a wide variety of injuries including hysterectomy, organ perforation, unwanted pregnancy, severe pain, painful intercourse, bleeding, excessive rashes, chronic fatigue, excessive hair loss, dental problems, excessive weight gain, heavy menstrual bleeding, abdominal bloating, abdominal pain, and fibromyalgia.  *See* Petition ¶¶ 460-991.  Their various injuries have allegedly prevented them from practicing and enjoying the activities of daily life.  *See id.*

20.    Further, in support of their request for punitive damages, Plaintiffs allege that Bayer concealed dangers and risks from Plaintiffs, their physicians, FDA and the public; made knowing misrepresentations; and engaged in willful and wanton conduct undertaken with disregard for Plaintiffs' rights.  *See id.* ¶¶ 1211-22.  Courts have found the amount in controversy satisfied in similar cases, in which plaintiffs have asserted similar injuries, alleged similar degrees of pain, and requested punitive damages.  *See, e.g.*, *In re Guidant Corp. Implantable*

*Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2007 WL 2572048, at *5 (D. Minn. Aug. 30, 2007) (amount-in-controversy requirement satisfied where plaintiff alleged serious injuries from medical device and sought punitive damages and other plaintiffs alleging injuries from same device plead damages in excess of $75,000).[2]

21.     Moreover—although Bayer denies that any relief is warranted—Missouri juries routinely award compensatory damages in excess of $75,000 in product liability cases where liability is found, further supporting the conclusion that the jurisdictional minimum requirement is satisfied.  *See, e.g.*, *Foster v. Catalina Indus., Inc.*, 55 S.W.3d 385, 389 (Mo. Ct. App. 2001); *Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 179, 182 (Mo. Ct. App. 1998).

22.     Thus, given the nature of Plaintiffs' alleged injuries, the scope of damages sought, and the lack of any express limitation on the amount of damages sought, each Plaintiff's claim plainly satisfies the jurisdictional amount requirement.

**B.     Complete Diversity Of Citizenship Exists.**

23.     There is complete diversity of citizenship between the proper parties.

24.     Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Pennsylvania.  Petition ¶ 157.  Thus, for diversity purposes, it is a citizen of Indiana and Pennsylvania.  *See* 28 U.S.C. § 1332(c).

25.     Plaintiffs allege that Defendant Bayer HealthCare LLC is a "for-profit corporation formed under the laws of the State of Delaware."  Petition ¶ 158.  Bayer HealthCare

---

[2] *E.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 692 F. Supp. 2d 1025, 1040 (S.D. Ill. 2010) ("Given the severe and ongoing nature of the injuries alleged, the court finds that it is plausible and supported by the preponderance of the evidence that the amount in controversy has been established."), *aff'd sub nom.* 643 F.3d 994 (7th Cir. 2011); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (complaint alleging various injuries from prescription drug "obviously" met amount-in-controversy requirement).

LLC is actually a limited liability company formed under the laws of Delaware.  Its citizenship is determined by the citizenship of its nine members.  *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004).  Those members are:

a.   Bayer Medical Care Inc., a Delaware corporation with its principal place of business in Pennsylvania;

b.   NippoNex Inc., a Delaware corporation with its principal place of business in New Jersey;

c.   Bayer West Coast Corporation, a Delaware corporation with its principal place of business in New Jersey;

d.   Bayer Essure Inc., a Delaware corporation with its principal place of business in New Jersey;

e.   Bayer Consumer Care Holdings LLC, a limited liability company, the sole common member of which is Bayer East Coast LLC and the sole preferred member of which is Bayer HealthCare US Funding LLC.  Bayer East Coast LLC's sole member is Bayer US Holding LP, and Bayer HealthCare US Funding LLC's members are Bayer AG, Bayer Pharma AG, and Bayer World Investments B.V.  Bayer US Holding LP is a limited partnership in which Bayer World Investments B.V. is the sole General Partner and Bayer Solution B.V. is the sole Limited Partner.  Both Bayer World Investments B.V. and Bayer Solution B.V. are incorporated in and have their principal places of business in the Netherlands.  Bayer AG and Bayer Pharma AG are German corporations with their principal places of business in Germany;

f.   Dr. Scholl's LLC, a limited liability company, the sole member of which is Bayer HealthCare US Funding LLC;

g.   Coppertone LLC, a limited liability company, the sole member of which is Bayer HealthCare US Funding LLC;

h.   MiraLAX LLC, a limited liability company, the sole member of which is Bayer HealthCare US Funding LLC; and

i.   Bayer HealthCare US Funding LLC, a limited liability company, whose members are Bayer AG, Bayer Pharma AG, and Bayer World Investments B.V.  Bayer AG is a German corporation with its principal place of business in Germany; Bayer Pharma AG is a German corporation with its principal place of business in Germany; and Bayer World Investments B.V. is incorporated in and has its principal place of business in the Netherlands.

11

Accordingly, Bayer HealthCare LLC is a citizen of Delaware, New Jersey, Pennsylvania, Germany, and the Netherlands.

26.     Plaintiff alleges that Defendant Bayer Essure Inc. is a Delaware corporation with its headquarters in California.  Petition ¶ 159.  In fact, Bayer Essure Inc.'s principal place of business has been in New Jersey since April 21, 2016.  Accordingly, it is a citizen of Delaware and New Jersey for diversity purposes.  *See* 28 U.S.C. § 1332(c).

27.     Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in New Jersey.  Petition ¶ 160.  Thus, for diversity purposes, it is a citizen of Delaware and New Jersey.  *See* 28 U.S.C. § 1332(c).

28.     Bayer AG is a German corporation with its principal place of business in Germany.  Petition ¶ 161.  Thus, for diversity purposes, it is a citizen of Germany.  *See* 28 U.S.C. § 1332(c).

29.     The 94 unrelated Plaintiffs allege that they are citizens of 31 different States: Arizona, Arkansas, California, Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Jersey, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, Wisconsin, and Wyoming.  Specifically:

        a.     Plaintiff Isabel Jones is a citizen of Arizona, id. ¶ 94;

        b.     Plaintiff Carrie Tye is a citizen of Arizona, id. ¶ 146;

        c.     Plaintiff Julie Denham is a citizen of Arkansas, id. ¶ 76;

        d.     Plaintiff Rebbie Gordon is a citizen of Arkansas, id. ¶ 87;

        e.     Plaintiff Crystal Larry is a citizen of Arkansas, id. ¶ 100;

        f.     Plaintiff Betty McDowell is a citizen of Arkansas, id. ¶ 111;

        g.     Plaintiff Veronica Hernandez is a citizen of California, id. ¶ 91;

h.      Plaintiff Angela Ochoa is a citizen of California, id. ¶ 121;

i.      Plaintiff Steffanie Oldmen is a citizen of California, id. ¶ 122;

j.      Plaintiff Gerea Vernon is a citizen of California, id. ¶ 148;

k.      Plaintiff Christi Coffman is a citizen of Colorado, id. ¶ 72;

l.      Plaintiff Andrea Gaffney is a citizen of Colorado, id. ¶ 84;

m.      Plaintiff Jodi Bennett is a citizen of Florida, id. ¶ 67;

n.      Plaintiff Venissa Driggers is a citizen of Florida, id. ¶ 78;

o.      Plaintiff Raquel Feliz-Clark is a citizen of Florida, id. ¶ 80;

p.      Plaintiff Amanda Pinnace is a citizen of Florida, id. ¶ 124;

q.      Plaintiff Tiari Simpson is a citizen of Florida, id. ¶ 133;

r.      Plaintiff Kristal Lofty is a citizen of Georgia, id. ¶ 104;

s.      Plaintiff Dawn Moore is a citizen of Georgia, id. ¶ 117;

t.      Plaintiff Lisa Murray is a citizen of Georgia, id. ¶ 120;

u.      Plaintiff Deshun Young is a citizen of Georgia, id. ¶ 155;

v.      Plaintiff Holly Stewart is a citizen of Idaho, id. ¶ 136;

w.      Plaintiff Jennifer Blackwell is a citizen of Illinois, id. ¶ 68;

x.      Plaintiff Dawn Cameron is a citizen of Illinois, id. ¶ 71;

y.      Plaintiff Donna House is a citizen of Illinois, id. ¶ 92;

z.      Plaintiff Aimee Lockart is a citizen of Illinois, id. ¶ 103;

aa.      Plaintiff Martha Schmidt is a citizen of Illinois, id. ¶ 130;

bb.      Plaintiff Ashley Thrust is a citizen of Indiana, id. ¶ 66;

cc.      Plaintiff Emily McNabb is a citizen of Iowa, id. ¶ 113;

dd.      Plaintiff Nicole Tsacudakis is a citizen of Iowa, id. ¶ 145;

ee.      Plaintiff Rhia McCoy is a citizen of Kentucky, id. ¶ 108;

ff.      Plaintiff Jo Marie McDonald is a citizen of Louisiana, id. ¶ 110;

gg.     Plaintiff Susan Davis is a citizen of Maryland, id. ¶ 75;

hh.     Plaintiff Keri Egnor is a citizen of Massachusetts, id. ¶ 79;

ii.      Plaintiff Leslie Daniels is a citizen of Michigan, id. ¶ 73;

jj.      Plaintiff Teesha Jones is a citizen of Michigan, id. ¶ 96;

kk.     Plaintiff Kayleigh Kwiatkowski is a citizen of Michigan, id. ¶ 98;

ll.      Plaintiff Angelica McClure is a citizen of Michigan, id. ¶ 106;

mm.    Plaintiff Melissa Sharp is a citizen of Michigan, id. ¶ 132;

nn.     Plaintiff Theresa Wells is a citizen of Michigan, id. ¶ 150;

oo.     Plaintiff Jennifer Williams is a citizen of Michigan, id. ¶ 151;

pp.     Plaintiff Shandra Fischer is a citizen of Minnesota, id. ¶ 82;

qq.     Plaintiff April Saari is a citizen of Minnesota, id. ¶ 128;

rr.      Plaintiff Brittany Uggerud is a citizen of Minnesota, id. ¶ 147;

ss.     Plaintiff Lakeisha Jones is a citizen of Mississippi, id. ¶ 95;

tt.      Plaintiff Wanda Thompson is a citizen of Mississippi, id. ¶ 142;

uu.     Plaintiff Tanya Dotson is a citizen of Missouri, id. ¶ 63;

vv.     Plaintiff Susan Harris is a citizen of Missouri, id. ¶ 89;

ww.    Plaintiff Kristal Kelley is a citizen of Missouri, id. ¶ 97;

xx.     Plaintiff Lisa McDaniel is a citizen of Missouri, id. ¶ 109;

yy.     Plaintiff Ramona Spencer is a citizen of Missouri, id. ¶ 134;

zz.     Plaintiff Lucinda Stuart is a citizen of Missouri, id. ¶ 137;

aaa.    Plaintiff Reneka Taylor is a citizen of Missouri, id. ¶ 140;

bbb.    Plaintiff Tina Zerillo-Otto is a citizen of Missouri, id. ¶ 156;

ccc.    Plaintiff Marie Baldwin is a citizen of New Jersey, id. ¶ 64;

ddd.    Plaintiff Jessica McMiller is a citizen of North Carolina, id. ¶ 112;

eee.    Plaintiff Deondravette McNeil is a citizen of North Carolina, id. ¶ 114;

fff.     Plaintiff Amanda Walker is a citizen of North Carolina, id. ¶ 149;

ggg.    Plaintiff Amy Cameron is a citizen of Ohio, id. ¶ 70;

hhh.    Plaintiff Shannon Griswold is a citizen of Ohio, id. ¶ 88;

iii.     Plaintiff Natisha Johnson is a citizen of Ohio, id. ¶ 93

jjj.     Plaintiff Leanne Martin is a citizen of Ohio, id. ¶ 105;

kkk.    Plaintiff Patricia Mounivong is a citizen of Ohio, id. ¶ 119;

lll.     Plaintiff Shameka Thomas is a citizen of Ohio, id. ¶ 141;

mmm.   Plaintiff Kandi Wilson is a citizen of Ohio, id. ¶ 152;

nnn.    Plaintiff Jennifer Doss is a citizen of Oklahoma, id. ¶ 77;

ooo.    Plaintiff Amber Roberts is a citizen of Oklahoma, id. ¶ 125;

ppp.    Plaintiff Claudia Merisca is a citizen of Pennsylvania, id. ¶ 65;

qqq.    Plaintiff Andrea Lantigua is a citizen of Rhode Island, id. ¶ 99;

rrr.     Plaintiff Jennifer Garland is a citizen of South Carolina, id. ¶ 85;

sss.     Plaintiff Juanita Hernandez is a citizen of South Carolina, id. ¶ 90;

ttt.     Plaintiff Angia Fields is a citizen of Tennessee, id. ¶ 81;

uuu.    Plaintiff Tiffany Morgan is a citizen of Tennessee, id. ¶ 118;

vvv.    Plaintiff Amy Patterson is a citizen of Tennessee, id. ¶ 123;

www.   Plaintiff Elicia Rogers is a citizen of Tennessee, id. ¶ 126;

xxx.    Plaintiff Krystal Tate is a citizen of Tennessee, id. ¶ 139;

yyy.    Plaintiff Selena Bluntzer is a citizen of Texas, id. ¶ 69;

zzz.     Plaintiff Angelica Davila is a citizen of Texas, id. ¶ 74;

aaaa.   Plaintiff Mandy Gonzales is a citizen of Texas, id. ¶ 86;

bbbb.  Plaintiff Shannon Lloyd is a citizen of Texas, id. ¶ 102;

cccc.   Plaintiff Cassandra Scurlock is a citizen of Texas, id. ¶ 131;

dddd.  Plaintiff Sarah McCormack is a citizen of Texas, id. ¶ 107;

eeee.   Plaintiff Dana Wilson is a citizen of Texas, id. ¶ 153;

ffff.   Plaintiff Jasmine Foster is a citizen of Virginia, id. ¶ 83;

gggg.   Plaintiff Jennifer Montejo is a citizen of Virginia, id. ¶ 116;

hhhh.   Plaintiff Angel Stabell is a citizen of Virginia, id. ¶ 135;

iiii.   Plaintiff Laura Thompson is a citizen of Virginia, id. ¶ 143;

jjjj.   Plaintiff Katina Wilson is a citizen of Virginia, id. ¶ 154;

kkkk.   Plaintiff Tonilynn Savage is a citizen of Washington, id. ¶ 129;

llll.   Plaintiff Lucia Lechner is a citizen of Wisconsin, id. ¶ 101;

mmmm.       Plaintiff Melinda Miller is a citizen of Wisconsin, id. ¶ 115;

nnnn.   Plaintiff Jennifer Roxbury is a citizen of Wisconsin, id. ¶ 127;

oooo.   Plaintiff Angela Swenson is a citizen of Wyoming, id. ¶ 138;

pppp.   Plaintiff Judy Traenkner is a citizen of Wyoming, id. ¶ 144.

30.     Only eight of the 94 Plaintiffs—the eight Missouri citizens ("Missouri Plaintiffs")—allege that events relevant to their claims occurred in Missouri.  The remaining 86 Plaintiffs ("non-Missouri Plaintiffs") allege no connection whatsoever to Missouri.

31.     Plaintiffs allege that complete diversity is destroyed by the presence of three Plaintiffs from Indiana, New Jersey, and Pennsylvania.  *Id.* ¶¶ 168-69.  But those Plaintiffs do not base their claims on any conduct or injuries that occurred in Missouri, and do not otherwise allege any kind of connection to Missouri.

32.     These non-diverse Plaintiffs are joined in this single action in a forum with which they have no connection for the sole purpose of attempting to destroy complete diversity.  But this ploy does not destroy diversity jurisdiction for two distinct reasons:

*First*, this Court should exercise its discretion to consider personal jurisdiction and forum non conveniens at the threshold, and grant Bayer's Motion to Dismiss the claims of the non-

Missouri Plaintiffs—including the non-diverse Plaintiffs—under these doctrines.  Once the non-Missouri Plaintiffs' claims are dismissed, complete diversity exists between the remaining Missouri Plaintiffs and Defendants.  Moreover, as will be shown in the Motion to Dismiss, those remaining claims also fail as a matter of law because they are preempted and inadequately pled.

*Second*, in the alternative, the citizenship of the non-Missouri Plaintiffs—including the non-diverse Plaintiffs—poses no impediment to diversity under the doctrine of fraudulent misjoinder and fraudulent joinder, even if this court considers diversity jurisdiction before personal jurisdiction.  Thus, this Court may grant Bayer's forthcoming Motion to Sever the various Plaintiffs' claims and remand only the claims of any non-diverse Plaintiffs that this Court does not otherwise dismiss.

> **1.    There is complete diversity between the proper parties because this Court lacks personal jurisdiction over the non-diverse and other non-Missouri Plaintiffs' claims.**

33.    The Supreme Court has made clear that courts may consider a motion to dismiss for lack of personal jurisdiction before considering a motion to remand for lack of subject matter jurisdiction, especially if the personal jurisdiction question is "straightforward" and the subject matter jurisdiction question is "difficult and novel."  *Ruhrgas*, 526 U.S. at 588; *accord Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001).  Thus, where it is clear that the court lacks personal jurisdiction over non-diverse plaintiffs' claims, there is no need to consider the doctrine of fraudulent misjoinder or fraudulent joinder:  the court should *first* dismiss the non-diverse plaintiffs' claims for lack of personal jurisdiction and *then*—in light of the diversity between the remaining plaintiffs and defendants—deny the motion to remand.  *See, e.g.*, *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 153 (2d Cir. 1996); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1494-95 (5th Cir. 1993), *cert. denied* 510 U.S. 1044 (1994); *Aclin*, 2016 WL 3093246, at *2; *Zofran*, 2016 WL 2349105, at *2-3; *Kraft v. Johnson & Johnson*, 97 F. Supp. 3d

846, 854-55 (S.D. W.Va. 2015); *Wolstenholme v. Bartels*, No. 10-5974, 2011 WL 4359989, at *1 n.1 (E.D. Pa. Sept. 19, 2011), *aff'd*, 511 F. App'x 215 (3d Cir. 2013); *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 899 (N.D. Iowa 2000); *Martino v. Viacao Aerea Riograndense, S.A.*, No. 90-1883, 1991 WL 13886, at *4 (E.D. La. Jan. 25, 1991); *Nolan v. Boeing Co.*, 736 F. Supp. 120, 127 (E.D. La. 1990).

34.     This Court should follow this approach here.  The personal jurisdiction issue is "simple when compared with," *Crawford*, 267 F.3d at 764, the relatively more "novel" and complex jurisdictional questions presented in multi-plaintiff complaints, *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620-22 (8th Cir. 2010); *see also Kraft*, 97 F. Supp. 3d at 850-51 (describing fraudulent misjoinder as "relatively recent and untested").  This Court should therefore consider the personal jurisdiction issue first.

35.     The personal jurisdiction question is "straightforward," *Ruhrgas*, 526 U.S. at 588, since this Court plainly lacks either general or specific personal jurisdiction over Bayer with respect to the non-diverse Plaintiffs' claims.

36.     Personal jurisdiction may be general or specific.  General jurisdiction covers claims "unrelated to the defendant's contacts with the forum state," and exists when the defendant's contacts unrelated to the claims at issue are so "continuous and systematic" as to render the defendant "essentially at home" in the forum state.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 & n.19 (2014); *Viasystems, Inc. v. EBM-Papbst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919-20 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

37.     Here, there is no general personal jurisdiction because no Defendant is incorporated in Missouri, has its principal place of business in Missouri, or has such continuous and systematic ties to Missouri as to render it "at home" in Missouri.  *Daimler*, 134 S. Ct. at 760-61 & n.19; *see also Keeley v. Pfizer Inc.*, No. 4:15-cv-00583, 2015 WL 3999488, at *2 (E.D. Mo. July 1, 2015).  To the extent that Plaintiffs suggest that general jurisdiction exists based on Bayer's "substantial business activities" in Missouri, Petition ¶ 167, it is plain that "[s]imply marketing and selling a product in a state does not make a defendant's affiliation with the state so 'continuous and systematic as to render them essentially at home in the forum state.'"  2015 WL 3999488, at *2 (quoting *Goodyear*, 564 U.S. at 919); *see also Zofran*, 2016 WL 2349105, at *3 (holding that marketing and selling products in Missouri was insufficient to establish general jurisdiction in Missouri); *Aclin*, 2016 WL 3093246, at *6 (holding that transacting business in Oklahoma was insufficient to establish general jurisdiction in Oklahoma).

38.     Similarly, specific personal jurisdiction exists only if a defendant "has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"  *Viasystems*, 646 F.3d at 594 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Unlike general jurisdiction, specific jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeley*, 2015 WL 3999488, at *3 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

39.     Bayer is not subject to specific personal jurisdiction with respect to the claims of the non-Missouri Plaintiffs (including all the non-diverse Plaintiffs).  None of these Plaintiffs' injuries arise out of or relate to any conduct or transaction that occurred in Missouri.  *Keeley*, 2015 WL 3999488, at *3; *see also Barthomome v. Pfizer, Inc.*, No. 4:15-cv-788, 2016 WL 366795, at *2 (E.D. Mo. Jan. 29, 2016); *Clarke v. Pfizer, Inc.*, 2015 WL 5243876, at *2 (E.D.

Mo. Sept. 8, 2015); *Zofran*, 2016 WL 2349105, at *5 ("[T]he non-Missouri plaintiffs do not

allege that they were prescribed Zofran in Missouri, took Zofran in Missouri, or that their

children suffered injuries in Missouri.  Nor do they allege any facts connecting the conduct of

GSK in Missouri, if any, to their own claims.").  Because personal jurisdiction is claim-specific,

*see Sun World Lines, Ltd. v. March Shipping Corp.*, 585 F. Supp. 580, 584-85 (E.D. Mo. 1984),

*aff'd*, 801 F.2d 1066 (8th Cir. 1986), the non-Missouri Plaintiffs cannot "piggyback" off the

specific personal jurisdiction that exists for the handful of Missouri Plaintiffs.  *See Level 3*

*Commc'ns, LLC v. Ill. Bell Tel. Co.*, No. 4:13-cv-1080, 2014 WL 50856, at *2 (E.D. Mo. Jan.

7, 2014), *vacated in part on other grounds*, 2014 WL 1347531 (E.D. Mo. Apr. 4, 2014); *accord*

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2016 WL 640520,

at *5-6 (N.D. Ill. Feb. 18, 2016); *Turi v. Main Street Adoption Servs., LLP*, No. 08-14511, 2009

WL 2923248, at *13 (E.D. Mich. Sept. 9, 2009), *aff'd in part, rev'd in part, and remanded on*

*other grounds*, 633 F.3d 496 (6th Cir. 2011).

      40.     Because Bayer is not subject to personal jurisdiction in Missouri with respect to

the non-Missouri Plaintiffs' claims, those claims (and those Plaintiffs) should be dismissed.  The

remaining Plaintiffs all reside in states in which no Defendant is a citizen.  *See* 28 U.S.C.

§ 1332(c).  Accordingly, this Court has diversity jurisdiction over the proper parties' claims.

### 2.     There is complete diversity between the proper parties because the non-Missouri Plaintiffs' claims should be dismissed under the doctrine of forum non conveniens.

      41.     Alternatively, this Court also may exercise its discretion to dismiss the non-

Missouri Plaintiffs' claims under the doctrine of forum non conveniens before considering

whether complete diversity exists.  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549

U.S. 422, 436 (2007) ("[W]here subject-matter or personal jurisdiction is difficult to determine,

and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly

takes the less burdensome course."); *Iwag v. Geisel Compania Maritima, S.A.*, 882 F. Supp. 597, 602 (S.D. Tex. 1995) (recognizing that "a district court sitting in diversity jurisdiction [may] decide a motion to dismiss for forum non conveniens before a motion to remand"). Forum non conveniens applies where, as here, "(1) . . . an adequate alternative forum is available, and (2) . . . the balance of private and public interest factors favors dismissal." *DeSirey v. Unique Vacations, Inc.*, 2014 WL 272369, at *1 (E.D. Mo. Jan. 24, 2014). Both of these factors are met.

42.     Each non-Missouri Plaintiff has an adequate alternative forum in her home state.

43.     The balance of private and public interest factors demonstrates that dismissal is appropriate here. The private factors include ease of access to and cost of obtaining witnesses, as well as other practical problems. The public factors include avoiding court congestion, the local interest in having localized controversies decided locally, the interest in having trial in a forum that is at home with the applicable law, the interest in avoiding conflict of laws questions, and the unfairness of burdening Missouri citizens with jury duty to decide claims unrelated to Missouri. *See de Melo v. Lederle Labs., Div. of Am. Cyanamid Corp.*, 801 F.2d 1058, 1062-63 (8th Cir. 1986); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

44.     The non-Missouri Plaintiffs' claims should be dismissed because (1) those claims are likely to require the presence of physician witnesses who are not located in Missouri, (2) there is no reason to burden Missouri courts and jurors with 86 sets of claims involving non-Missouri Plaintiffs who allegedly suffered injuries outside of Missouri, and (3) dismissing claims of non-Missouri Plaintiffs will avoid the need to resolve numerous conflict of laws issues.

45.     Thus, this Court may dismiss the non-Missouri Plaintiffs' claims under the doctrine of forum non conveniens, and find complete diversity between the remaining Plaintiffs and Defendants.

### 3.     There is complete diversity because the non-Missouri Plaintiffs are fraudulently misjoined.

46.     The non-diverse Plaintiffs also do not destroy diversity jurisdiction because they are fraudulently misjoined.

47.     "Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, . . . even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other." *In re Prempro*, 591 F.3d at 620 (quoting Ronald A. Parsons, Jr., *Should the Eighth Circuit Recognize Procedural Misjoinder?*, 53 S.D. L. Rev. 52, 57 (2008)).  The Eighth Circuit has suggested that it would recognize fraudulent misjoinder if a misjoinder is "egregious."  *Id.* at 622.  Misjoinder occurs when joined claims do not both (1) "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and (2) involve "any question of law or fact common to all plaintiffs."  Fed. R. Civ. P. 20(a); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001) ("Misjoinder of parties occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20(a)."); *see also* Mo. Sup. Ct. R. 52.05; *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, 2012 WL 1118780, at *3 (D.N.J. Apr. 3, 2012) ("Missouri's permissive joinder rule is substantively identical to" Federal Rule 20(a)), *aff'd*, 751 F.3d 150 (3d Cir. 2014).

48.     Here, as shown above, the non-Missouri Plaintiffs are fraudulently misjoined because of the clear and indisputable lack of personal jurisdiction—and because of the jurisdictional gerrymandering across these complaints.  As this Court has recognized, the

absence of personal jurisdiction is a basis to find fraudulent misjoinder where, as here, the arguments supporting personal jurisdiction are especially weak or "improbable." *See Littlejohn v. Janssen Research & Dev., LLC*, No. 4:15-cv-194, 2015 WL 1647901, at *1 (E.D. Mo. Apr. 13, 2015). In light of *Daimler*, *Keeley*, *Level 3*, and the other cases cited above, the lack of personal jurisdiction with respect to the non-Missouri Plaintiffs' claims is palpable and this Court may therefore conclude that their inclusion in this Petition amounts to fraudulent misjoinder.

49. The misjoinder here is particularly clear for the additional reason that the various Plaintiffs' claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." *See* Fed. R. Civ. P. 20. To the contrary, Essure is a highly regulated medical device that is available only through a patient's prescribing physician. The far-flung Plaintiffs joined together in this litigation had their devices placed at various different times, in different states, and in different circumstances, and they allegedly suffered separate and distinct injuries.

50. The only possible connection in the Plaintiffs' various experiences is that they all involve the same prescription medical device. But, as this Court has recognized, plaintiffs are misjoined where "[e]ach [p]laintiff was injured at different times in different states allegedly from their use of [the product] that was presumably prescribed by different healthcare providers." *Alday v. Organon USA, Inc.*, Nos. 4:09-cv-1415, 2009 WL 3531802, at *1 (E.D. Mo. Oct. 27, 2009) *Boschert v. Pfizer, Inc.*, 2009 WL 1383183, at *3 (E.D. Mo. May 14, 2009) (similar).

51. Similarly, "[a] multitude of cases around the country have held that plaintiffs were not properly joined when the only common link among them was a defective drug or medical device." *Stinnette v. Medtronic Inc.*, No. H-09-03854, 2010 WL 767558, at *2 (S.D.

Tex. Mar. 3, 2010) (citing *In re Rezulin*, 168 F. Supp. 2d at 145-46; *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001)); *see, e.g.*, *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331, 2013 WL 3729570, at *3 (E.D.N.Y. May 17, 2013) (allowing removal from Missouri state court; case transferred to MDL); *In re Fosamax*, 2012 WL 1118780, at *4 (rejecting joinder of claims against the manufacturers and seller of the same drug); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-MD-1769, 2006 WL 3929707, at *4 (M.D. Fla. Dec. 22, 2006) ("Because these multiple plaintiff cases do not appear to seek relief arising from the same transaction or occurrence, severance of the individual plaintiffs is proper."), *adopted*, 2007 WL 219989 (M.D. Fla. Jan. 26, 2007); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002) (finding joinder improper based on the "many differences between the unique histories of each plaintiff"); *In re Diet Drugs*, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (holding multiple plaintiffs alleging damages in a single case arising from ingestion of diet drugs were "clearly misjoined" under Fed. R. Civ. P. 20(a)); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1995 WL 428683, at *6 (E.D. Pa. July 17, 1995) ("[J]oinder based on the belief that the same occurrence or transaction is satisfied by the fact that claimants have the same or similar device of a defendant manufacturer implanted in or about their spine is . . . not a proper joinder . . . .").

52.     Severance is particularly appropriate here in light of the disparate factual and legal issues that pertain to each Plaintiff.  Each Plaintiff's claim will be dominated by distinctive factual issues, such as the specific details of each Plaintiff's Essure procedure, each Plaintiff's medical history prior to that procedure, the type and nature of the injuries each Plaintiff allegedly suffered, causation of those injuries, the training and performance of each Plaintiff's physician, each Plaintiff's and her physician's reliance on alleged misrepresentations, and each Plaintiff's

and her physician's consideration of the Essure labeling and warnings that existed at the times of each Plaintiff's alleged injuries. Similarly, each Plaintiff's claim will involve disparate legal questions unique to the law of 31 separate jurisdictions, such as elements of common law actions, the learned intermediary doctrine, the availability of punitive damages, and the length of applicable statutes of limitations.[3]

### 4. There is complete diversity because the non-Missouri Plaintiffs are fraudulently joined.

53.    In the alternative, the Court also should disregard the citizenship of the non-diverse Plaintiffs because they are fraudulently joined. "The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012); *see also Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) (per curiam) ("Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal."); *Peterson v. Concentra, Inc.*, No. 4:07-cv-387, 2007 WL 1459826, at *1 (E.D. Mo. May 16, 2007) ("[I]t is well-settled that the district court will not allow removal jurisdiction to be defeated by the plaintiff's destruction of complete diversity of citizenship by the . . . improper joinder of parties . . . .") (alteration in original). Plaintiffs, as well as defendants, can be fraudulently joined. *See, e.g., Allen v. Bayer*

---

[3] Unlike *Anders v. Medtronic, Inc.,* No. 4:14-cv-00194, 2014 WL 1652352 (E.D. Mo. Apr. 24, 2014), this case does not involve an alleged scheme to promote a medical device off-label. *Anders* held that such a "scheme" constituted the same transaction, occurrence, or series of transactions or occurrences for purposes of Rule 20. *Id.* at *3. Here, by contrast, Plaintiffs' claims will necessarily turn on an individualized inquiry into whether and how any alleged misrepresentation or failure to warn impacted each individual patient and her doctor's decision to use Essure. *See, e.g., Simmons v. Wyeth Labs., Inc.*, 1996 WL 617492, at *3-4 (E.D. Pa. Oct. 24, 1996) (misrepresentations or failure to warn by the defendants did not satisfy the "same transaction, occurrence, or series of transactions or occurrences" requirement).

*Healthcare Pharm.*, *Inc.*, No. 4:14-cv-178, 2014 WL 655585, at *2-4 (E.D. Mo. Feb. 20, 2014);

*Witherspoon v. Bayer HealthCare Pharm. Inc.*, No. 4:13-cv-01912, 2013 WL 6069009, at *4

(E.D. Mo. Nov. 18, 2013).

54.     As set forth above, there is no reasonable basis under which the non-Missouri

Plaintiffs may subject Bayer to general or specific personal jurisdiction in Missouri.  Because the

only plausible basis for including these non-Missouri Plaintiffs in this action is to destroy

diversity jurisdiction, this Court should apply the doctrine of fraudulent joinder and find

complete diversity of citizenship.

## III.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1441.

55.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1441.

56.     Federal question jurisdiction exists where a plaintiff pleads federal violations on

the face of the complaint and "the vindication of a right under state law necessarily turn[s] on

some construction of federal law."  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808

(1986) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9

(1983)).  This "captures the commonsense notion that a federal court ought to be able to hear

claims recognized under state law that nonetheless turn on substantial questions of federal law,

and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum

offers on federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S.

308, 312 (2005).  "[T]he question is, does a state-law claim necessarily raise a stated federal

issue, actually disputed and substantial, which a federal forum may entertain without disturbing

any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

57.     Thus, federal question jurisdiction exists where "(1) the right to relief under state law depends on the resolution of a substantial, disputed federal question, and (2) the exercise of jurisdiction will not disrupt the balance between federal and state jurisdiction adopted by Congress." *Pet Quarters,* 559 F.3d at 779.  These factors are met here, as well-reasoned decisions by courts have held in the context of heavily regulated PMA medical devices presented here.  *See Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 878 (W.D. Tenn. 2013) (finding federal question jurisdiction over state-law product liability claims regarding PMA medical device because claims required court to decide questions of federal law); *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 677-78 (S.D. Ohio 2014) (similar); *cf. Bowdrie v. Sun Pharm. Indus. Ltd.*, 909 F. Supp. 2d 179, 184-85 (E.D.N.Y. 2012) (finding federal question jurisdiction in product liability drug case where "boundaries of Plaintiffs' claims . . . are established by the FDCA").

58.     Here, Plaintiffs' claims turn on whether Defendants violated federal regulatory requirements.  *See* § III.A, *infra*.  Moreover, FDA's recent investigation into and response to the very issues that are the subject of this case renders the federal interest particularly substantial and warrants the exercise of federal jurisdiction to resolve the overwhelmingly federal issues of law at issue in this case.  *See* Petition ¶¶ 375-76.

### A.     Plaintiffs' Right To Relief Depends On The Resolution Of Substantial Federal Questions.

59.     Substantial federal questions arise "on the face" of the Petition "as demonstrated by the words [Plaintiffs] themselves selected." *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1004 (8th Cir. 2000).  Indeed, Plaintiffs predicate their state-law claims on numerous alleged violations of federal requirements that they plead directly in their Petition.  For example, Plaintiffs allege:

      a.      that Bayer "failed to comply with several of the … conditions of their PMA Order and federal regulations governing medical device manufacturer reporting requirements," Petition ¶ 209;

      b.      that Bayer "failed to comply with several of the . . . conditions of their PMA Order and federal regulations governing medical device manufacturing processes," *id.* ¶ 220;

      c.      that "Bayer's MDRs regarding device breakage were inaccurate, misleading, and not in compliance with MDR reporting requirements," *id.* ¶ 347;

      d.      that Bayer "purposefully ignored their mandatory federal reporting requirements," *id.* ¶ 384;

      e.      that Bayer "violated federal law, the FDCA, the MDA, and the regulations," *id.* ¶¶ 1008, 1029;

      f.      that Bayer failed to "compl[y] with [its] duties to the FDA as described under the Medical Device Reporting procedure, 21 C.F.R. § 803," *id.* ¶ 1043;

      g.      "non-compliance by [Bayer] with the FDCA, and the regulations promulgated pursuant to it," *id.* ¶¶ 1058, 1090;

      h.      that Bayer failed to "compl[y] with [its] duties to the FDA as described under the FDCA," *id.* ¶ 1111.

60.      These allegations of federal violations are not tangential:  Plaintiffs' right to relief "depends on" their resolution.  *Pet Quarters*, 559 F.3d at 779.  As part of the Medical Device Amendments, Congress adopted a "general prohibition on non-Federal regulation" of medical devices, H.R. Rep. No. 94-853, at 45 (1976), by expressly preempting "any requirement" imposed by state law relating to the safety or effectiveness of a medical device that "is different from, or in addition to, any requirement applicable . . . to the device" under federal law.  21 U.S.C. § 360k(a).  As the Supreme Court held in *Riegel*, premarket approval of a Class III medical device establishes federal requirements applicable to that device, and state-law tort claims targeting the safety and effectiveness of the device impose state-law requirements.  552 U.S. at 321-25.  Thus, to the extent state-law claims rest on duties "different from, or in addition

28

to" federal requirements, they are expressly preempted.  *Id.* at 330.  As the Eighth Circuit has explained, a "plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a))."  *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)) (emphasis omitted).  Thus, Plaintiffs cannot succeed on their state-law claims unless they show that Bayer violated a federal requirement.

61.     It is no answer to suggest that the federal-law questions arise only in the context of a preemption defense.  In rejecting a similar attempt to defeat federal question jurisdiction, another court explained that "Plaintiffs have set the landscape and scope of the issues that would be addressed in this case, and Defendants have properly asserted an applicable preemption defense to Plaintiffs' claims."  *Jenkins*, 984 F. Supp. 2d at 880.  Here as well, Plaintiffs "set the landscape" when they pleaded violations of federal law on the face of their own Petition.  Having done so, Plaintiffs may not now deny that their Petition raises federal questions.  *Country Club Estate*, 213 F.3d at 1004.

62.     *Anders v. Medtronic, Inc.*, No. 4:14-cv-00194, 2014 WL 1652352 (E.D. Mo. Apr. 24, 2014), is not binding and is not persuasive in the circumstances presented here.  *Anders* mistakenly held that a case involving a Class III medical device was controlled by *Merrell Dow*, which rejected federal question jurisdiction in a case involving prescription drugs.  *Anders*, 2014 WL 1652352, at *6.  *Anders* acknowledged that the express preemption provision of § 360k applies to PMA medical devices and not prescription drugs, but rejected this distinction as a valid basis for finding federal question jurisdiction.  *See id.*

63.     Second, *Anders* acknowledged the Supreme Court's holding that "there is no good reason to shirk from federal jurisdiction over [a] dispositive and contested federal issue at the heart of" a case when there are no "threatening structural consequences" to federal

29

jurisdiction and the parties have a "clear interest . . . in the availability of a federal forum." *Grable*, 545 U.S. at 319-20; *see Anders*, 2014 WL 1652352, at *6. Here, both conditions are met. FDA's involvement in this matter is extraordinary: it not only has conducted the usual stringent PMA review, but FDA also has specifically investigated *the very matters* that are the subject of Plaintiffs' claims and made a determination earlier this year that Essure remains "an appropriate option for the majority of women seeking a permanent form of birth control." FDA News Release (Feb. 29, 2016) (Ex. D). Plaintiffs are seeking to second-guess this federal law determination by a federal agency. Far from "threatening structural consequences," permitting the inherently federal claims at issue here to be addressed in a federal forum properly recognizes and protects the significant federal interest in this case.

### B.      Federal Jurisdiction Will Not Disrupt the Federal-State Balance.

64.      For similar reasons, the exercise of federal jurisdiction will not disrupt the balance between federal and state law that Congress has created. Federal jurisdiction here would be confined to a "small fraction of medical-device cases"—namely, cases involving Class III PMA devices in which FDA has taken specific steps to address the alleged issues that are the subject of Plaintiffs' Petition. *See generally Anders*, 2014 WL 1652352, at *7. At the same time, jurisdiction will permit a federal court to decide important and necessarily federal issues of law. *See Reuter*, 996 F. Supp. 2d at 680.

65.      Accordingly, this Court should exercise federal question jurisdiction here.

## IV.    REMOVAL IS PROPER UNDER CAFA.

66.      The Class Action Fairness Act gives this Court removal jurisdiction over certain "mass actions," defined as civil actions in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common

questions of law or fact." *See* 28 U.S.C. §§ 1332(d)(11)(B)(i), 1453(a).  To be removable, such "mass actions" must involve (a) diversity between at least one plaintiff and at least one defendant, and (b) plaintiffs whose amounts in controversy individually exceed $75,000 and collectively exceed $5,000,000.  *Id.* § 1332(d)(2), (d)(6), (d)(11)(B)(i).  These requirements are met here.

### A.    This Petition Is Part Of A Single Mass Action Involving More Than 100 Plaintiffs.

67.    The instant Petition, together with the petitions in *Dorman*, *Tenny*, *Jones*, and *Mounce* establishes a "mass action" consisting of 508 plaintiffs.

68.    As the Eighth Circuit has held, cases brought in separate complaints may constitute a single "mass action" for purposes of CAFA where (1) they involve "common questions of law or fact," and (2) the plaintiffs' claims are "proposed to be tried jointly."  *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162-63 (8th Cir. 2013).  There is no dispute that this case, *Dorman*, *Tenny*, *Jones*, and *Mounce* involve "common questions of law or fact."

69.    The requirement that claims be "proposed to be tried jointly" does not mean that removal is improper unless the plaintiffs propose a single trial covering every plaintiff's claims.  *Id.* at 1163 ("[W]e conclude that construing the statute to require a single trial of more than 100 claims would render 28 U.S.C. § 1332(d)(11) defunct.") (internal quotation marks omitted).  CAFA was designed precisely to prevent plaintiffs' counsel from "gam[ing]" procedural rules to avoid federal jurisdiction by artificially dividing their claims between different complaints to avoid federal jurisdiction.  S. Rep. No. 109-14, at 4, 24 (2005), *reprinted in* 2005 U.S.C.C.A.N. 6; *see also id.* at 5; S. Rep. 109-147, at 10 (2005), *reprinted in* 2005 U.S.C.C.A.N. 11. Accordingly, a district court must "pierce the pleadings" and "look to the substance of the

action" in order to prevent plaintiffs from rendering CAFA defunct by creative drafting. *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008).

70.     For this reason, plaintiffs cannot evade CAFA removal by "artificially structuring their suits to avoid federal jurisdiction." *Freeman*, 551 F.3d at 407.  When plaintiffs' complaints are "identical" in their substance, and plaintiffs "put forth no colorable reason for breaking up [their] lawsuits . . . other than to avoid federal jurisdiction," *id.*, "the total of such identical splintered lawsuits may be aggregated" for purposes of CAFA jurisdiction, *id.* at 409.[4]  *See Proffitt*, 2008 WL 4401367, *2, 5 (same, where plaintiffs' contrived structuring of eleven separate complaints was "completely arbitrary" and "ha[d] no justifiable basis" other than to avoid CAFA); *see also Brook*, 2007 WL 2827808, *4 (denying remand where plaintiffs filed identical class actions in different states' courts and invoked CAFA's "local controversy" exception); *Shappell v. PPL Corp.*, No. 06-2078, 2007 WL 893910, *3 (D.N.J. Mar. 21, 2007) (conditioning dismissal of CAFA-removed action on plaintiffs not using the dismissal "as a means of 'gerrymandering' smaller class sizes in state court, which fall beyond the purview of CAFA").

71.     *Freeman* is instructive.  In that case, the plaintiffs arbitrarily split their suit into five separate actions, each seeking less than $4.9 million, in a contrived effort to avoid CAFA's aggregate amount in controversy requirement of $5 million.  551 F.3d at 406.  The Sixth Circuit held that there was "no colorable basis" for plaintiffs' splintering the suits "other than to avoid

---

[4] To be clear, as discussed in Bayer's Motion to Sever, Bayer contends that all of Plaintiffs' claims should be severed and do not belong together.  And, if Bayer's severance motion is granted, the Court can and should maintain jurisdiction over the completely diverse Plaintiffs and Defendants, and dismiss the other Plaintiffs' actions.  What Plaintiffs cannot do, however, is "gerrymander" their otherwise nearly identical complaints by joining together slightly less than 100 Plaintiffs in each of several complaints to try to avoid CAFA jurisdiction.

the clear purpose of CAFA," and that to allow such "pure structuring" would mean that the "obvious purpose in passing the statute—to allow defendants to defend large interstate class actions in federal court—can be avoided almost at will." *Id.* at 406-07. The court accordingly reversed orders remanding the actions, holding that CAFA was "clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." *Id.* at 407.

72.     These decisions are in keeping with congressional design. CAFA's mass action provision was enacted to prevent the sort of gamesmanship employed by plaintiffs' counsel here. One of Congress's main purposes in enacting CAFA was to "restore the intent of the framers" by extending federal court jurisdiction over "interstate cases of national importance under diversity jurisdiction." CAFA, Pub. L. No. 109-2, § 2, 119 Stat 4, 4-5 (2005). Through CAFA, Congress expanded federal diversity jurisdiction to "'address inequitable state court treatment'" and to eliminate "'abusive practices'" involving class action and mass action devices, including the abuse at issue here: the tandem filing of copycat actions with the same claims in the same state court to try to evade federal court jurisdiction. *See Proffitt*, 2008 WL 4401367, at *1-2.

73.     CAFA's legislative history confirms Congress's intent to correct such abusive practices by plaintiffs' counsel. Explaining CAFA's purposes, the Senate Report stated that CAFA was designed to overturn prior law that allowed "'lawyers to game' the procedural rules and keep nationwide or multi-state class actions in state courts," including by filing "copycat" suits. S. Rep. No. 109-14, at 4, 24 (2005), *reprinted in* 2005 U.S.C.C.A.N. 6; *see id.* at 5 (noting that CAFA was intended to make it "harder for plaintiffs' counsel to 'game the system'" by defeating diversity jurisdiction). The Senate Report expressly recognized that "mass actions" "are subject to many of the same abuses" as class actions—but may even be "worse because the lawyers seek to join claims that have little to do with each other and confuse a jury into awarding

33

millions of dollars to individuals who have suffered no real injury." *Id.* at 44-45. Accordingly, CAFA should be construed to effectuate its plain purpose of enhancing federal jurisdiction over mass actions and ending plaintiffs' ability to elude such jurisdiction.

74.     Here, the 414 plaintiffs in this case, *Dorman*, *Tenny*, *Jones*, *Mounce*, and *Hall* have filed substantively identical petitions, each with fewer than 100 plaintiffs, for the sole purpose of avoiding CAFA. Indeed, the complaint here contains virtually identical cut-and-paste allegations and causes of action from *Dorman*, *Tenny*, *Jones*, *Mounce*, and *Hall*, modified only slightly in light of the different plaintiffs in each complaint. *Compare* Petition, *with* Petition, *Dorman v. Bayer Corp.*, 4:16-cv-00601, Petition, *Tenny v. Bayer Corp.*, 4:16-cv-01189, Petition, *Jones v. Bayer Corp.*, 4:16-cv-01192, Petition, *Mounce v. Bayer Corp.*, 4:16-cv-01478, *and* Petition, *Hall v. Bayer Corp.*, 4:16-cv-01523. There is no conceivable reason, other than to defeat CAFA jurisdiction, that these Plaintiffs did not all join the same petition. The facts that— unlike in *Atwell*—the same lawyers represent all plaintiffs and the complaints are otherwise functionally identical underscores that the six petitions are simply an artifice to avoid CAFA.

75.     Bayer recognizes that the Eighth Circuit stated in *Atwell* that "state court plaintiffs with common claims against a common defendant may bring separate cases with fewer than 100 plaintiffs each to avoid federal jurisdiction under CAFA—unless their claims are 'proposed to be tried jointly,'" 740 F.3d at 1162-63, and that the Eastern District of Missouri has remanded cases in which more than 100 plaintiffs filed multiple complaints, each with fewer than 100 plaintiffs and each with the same counsel. *See, e.g.*, *Ferrar v. Johnson & Johnson Consumer Companies, Inc.*, No. 4:15-cv-1219, 2015 WL 5996357, at *3 (E.D. Mo. Oct. 14, 2015). However, *Atwell* is distinguishable because it was not considering a case—like this one—in which all plaintiffs were represented by the same counsel, and the statement just quoted

34

should not be read to cover such a case. The Eastern District of Missouri's extension of *Atwell* to cover gamesmanship *by the same counsel* is unwarranted. Nothing precludes this Court from following the logic of *Freeman* and holding that plaintiffs acting through the same counsel cannot defeat CAFA jurisdiction by "artificially structuring their suits to avoid federal jurisdiction." *Freeman*, 551 F.3d at 407. If, however, this Court believes that *Atwell* does preclude removal under CAFA, Bayer respectfully submits that it intends to urge the Eighth Circuit to distinguish *Atwell* and make clear that plaintiffs' counsel cannot evade CAFA by gerrymandering complaints in this fashion.

> **B.    The Remaining Requirements For CAFA Removal Are Satisfied.**

76.    Removal of this mass action is proper because CAFA's diversity and amount in controversy requirements are met.

77.    First, as set forth above, all but three Plaintiffs named in this Petition are citizens of different states than Defendants. Likewise, most of the plaintiffs in *Dorman, Tenny Jones*, *Mounce,* and *Hall* are citizens of different states than Defendants. Thus, CAFA's requirement of diversity between at least one plaintiff and at least one defendant is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

78.    Second, as set forth above, each Plaintiff named in this Petition has an amount in controversy exceeding $75,000. Likewise, each plaintiff in *Dorman*, *Tenny*, *Jones*, *Mounce,* and *Hall* has an amount in controversy exceeding $75,000. The total amount in controversy thus necessarily exceeds $5,000,000. CAFA's amount in controversy requirement is therefore satisfied. *See* 28 U.S.C. § 1332(d)(2), (d)(6), (d)(11)(B)(i).

79.    No exception to CAFA removal jurisdiction under 28 U.S.C. § 1332(d) is applicable here.

80.     Accordingly, this Court has jurisdiction under CAFA.

## CONCLUSION

WHEREFORE, Notice is given that this action is removed from the Circuit Court of the City of St. Louis, Missouri, to the United States District Court for the Eastern District of Missouri, Eastern Division.

DATED:     October 11, 2016                     Respectfully submitted,

                                                HEPLERBROOM LLC

                                                BY:  */s/ W. Jason Rankin*
                                                W. Jason Rankin #62672
                                                wjr@heplerbroom.com
                                                Gerard T. Noce #27636
                                                gtn@heplerbroom.com
                                                211 North Broadway Suite 2700
                                                St. Louis, MO 63102
                                                Tel:  314-241-6160
                                                Fax: 314-241-6116

                                                *Attorneys for Defendants Bayer*
                                                *Corporation, Bayer HealthCare LLC, Bayer*
                                                *Essure Inc., and Bayer HealthCare*
                                                *Pharmaceuticals Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of October, 2016, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system, electronic mail, and/or U.S. Mail, postage prepaid:

Eric D. Holland
R. Seth Crompton
**HOLLAND LAW FIRM**
300 N. Tucker Blvd., Suite #801
Saint Louis, Missouri, 63101
314-241-8111 - Telephone
314-241-5554 - Fascimile
eholland@allfela.com
scrompton@allfela.com

Lewis O. Unglesby (Anticipated Pro Hac Vice)
Lance C. Unglesby (Anticipated Pro Hac Vice)
Jason R. Williams (Anticipated Pro Hac Vice)
Logan H. Greenberg (Anticipated Pro Hac Vice)
Nicole E. Burdett (Anticipated Pro Hac Vice)
Adrian M. Simm Jr. (Anticipated Pro Hac Vice)
**UNGLESBY WILLIAMS**
607 St. Charles Avenue
New Orleans, LA 70130
Tel: (504) 345-1390
Fax: (504) 324-0835

Wells T. Watson (Anticipated Pro Hac Vice)
Jeffrey T. Gaughan (Anticipated Pro Hac Vice)
Zita M. Andrus (Anticipated Pro Hac Vice)
**BAGGETT, MCCALL, BURGESS,
WATSON & GAUGHAN**
3006 Country Club Road
P. O Drawer 7820
Lake Charles, LA 70605
Tel: (337) 478-8888
Fax: (337) 478-8946

*Attorneys for Plaintiffs*

/s/ W. Jason Rankin
*Attorney for Bayer Corporation, Bayer HealthCare LLC, Bayer Essure Inc., and Bayer HealthCare Pharmaceuticals Inc.*